UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
LAWRENCE JOHNSON, et al. :
:
                 Plaintiffs, :    01 Civ. 9587 (PKC)
:
   -against- :
:
GLENN GOORD, et al., :    MEMORANDUM
:    AND
                 Defendants. :    <u>ORDER</u>
---------------------------------------------------------------x


P. KEVIN CASTEL, U.S.D.J.

        Plaintiffs Lawrence Johnson, Jamal Stephenson, Tom Lynch and Charles Woods, proceeding <u>pro se</u>, are disabled inmates who are or have been incarcerated by the New York State Department of Correctional Services ("DOCS") at the Green Haven Correctional Facility ("Green Haven"). Each resides or has resided in the Unit for the Physically Disabled ("UPD") at Green Haven, which, as its name implies, is a cellblock specifically designed for inmates with disabilities. Plaintiffs commenced this action against DOCS, its commissioner, the State of New York, the Superintendent of Green Haven and several members of the medical staff at that facility, alleging numerous constitutional violations.

        Plaintiffs alleged a range of disparate claims of constitutionally deficient medical care at Green Haven, including that some or all of them were denied access to properly fitting wheelchairs, were denied access to treatment for Hepatitis C, and that the medical staff at Green Haven had changed their pain medication without their consent. Plaintiffs Johnson, Lynch and Stephenson, non-smokers, asserted that they have been, and continue to be, exposed to dangerous levels of environmental tobacco smoke ("ETS") resulting in nu-

merous health problems, including coughing fits, problems with breathing, exacerbation of their asthma, and skin irritation. Plaintiff Woods, a smoker, alleged that ETS, i.e., second-hand smoke, reawakened his addiction to cigarettes and that Green Haven wrongfully denied him access to smoking cessation programs and required him to pay for the dermally-applied nicotine patch, which is available for inmate purchase through the prison commissary.

Plaintiffs sought redress of these alleged wrongs under 42 U.S.C §§ 1983, 1985(3), 1986 and 1988, as well as Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq., and section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.

On September 29, 2004, I granted in large part defendants' motion for summary judgment. See Johnson v. Goord, No. 01 Civ. 9587 (PKC), 2004 WL 2199500 (S.D.N.Y. Sept. 29, 2004) ("Johnson III").[1] Specifically, I granted summary judgment to defendants on plaintiffs' wheelchair claims, Johnson's Hepatitis C and pain medication claims, Woods's nicotine patch claim, all ADA and Rehabilitation Act claims, and all claims for declaratory and injunctive relief. With regard to plaintiffs' ETS claims, I granted summary judgment to defendants to the extent plaintiffs' claims related to the period from January 1, 2001, the date a complete ban on indoor smoking was adopted, to the present. I concluded that plaintiffs had failed to show anything beyond isolated instances of noncompliance with the ban, which was insufficient to demonstrate the required "deliberate indifference" on the part of defendants. Id. at *17.

---

[1] In two earlier opinions, Judge Scheindlin had dismissed plaintiffs' conspiracy claims related to ETS exposure, dismissed all claims against the tobacco companies originally named as defendants, and denied motions for a preliminary injunction and class certification. See Johnson v. Newport Lorillard, 2002 WL 1203842 (S.D.N.Y. June 3, 2002) ("Johnson I") (dismissing plaintiff's conspiracy claims and claims against tobacco company defendants); Johnson v. Newport Lorillard, 2003 WL 169797 (S.D.N.Y. Jan. 23, 2003) ("Johnson II") (denying class certification and preliminary injunction motions).

With regard to ETS claims for the period prior to January 1, 2001, I denied defendants' motion. At that juncture, defendants had failed to present evidence (beyond a general reference to the 5000-plus pages of plaintiffs' "medical records") demonstrating that the plaintiffs' exposure to ETS did not present a sufficiently serious risk to their present or future health so as to rise to the level of an Eighth Amendment violation. Also, there was little evidence in the record regarding the extent of ETS exposure prior to the ban or the genesis and development of the pre-ban smoking policy at Green Haven. <u>Id.</u> at *15-*17. I noted that I would, upon a showing of good cause, entertain an application from defendants to renew their summary judgment motion with respect to the pre-2001 ETS claims. <u>Id.</u> at *17 n.8. By Order dated October 22, 2004, I granted the remaining defendants leave to renew their motion for summary judgment. Defendants filed that motion on January 24, 2005. Johnson submitted an affidavit in opposition on February 19, 2005. Neither Lynch nor Stephenson filed opposition papers or sought an extension of the February 25, 2005 date for such a filing.[2] As counseled by <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244-45 (2d Cir. 2004), the lack of opposition does not relieve the movant of its obligation to demonstrate its entitlement to relief under Fed. R. Civ. P. 56.

The background facts are largely set forth in my opinion in <u>Johnson III</u>, familiarity with which is assumed. For the reasons set forth below, defendants' motion for summary judgment on plaintiffs' remaining claims is granted.

---

[2] Plaintiff Woods, a smoker, made no claim with regard to ETS exposure, but claimed that DOCS should be required to provide him with a "nicotine patch" free of charge. That claim was dismissed in <u>Johnson III</u>. <u>See id.</u> at *18. Thus, after <u>Johnson III</u>, Woods had no remaining claims in this action. In any event, Woods agreed, as part of the settlement of a separate action before Judge Scheindlin, to dismissal of his claims in this action. <u>See</u> December 20, 2004 Stipulation of Settlement and Order of Dismissal in <u>Woods v. Goord</u>, No. 01 Civ. 3255 (SAS).

3

Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the non-moving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation and quotation marks omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of its claim or defense, demonstrating that it is entitled to relief. The evidence on each material element, if unrebutted, must be sufficient to entitle the movant to relief in its favor, as a matter of law. Vermont Teddy Bear Co., 373 F.3d at 244. When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" as to a material fact. Fed. R. Civ. P. 56(e). A fact is material if it "might affect the outcome of the suit under the governing law. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Thus, in order to survive summary judgment, plaintiffs must come forth with more than a mere scintilla of evidence in support of their position; they must come

forward with evidence "on which the jury could reasonably find for the plaintiff." Id. at 252. "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.), cert. denied, 524 U.S. 911 (1998). In the absence of any genuine dispute over a material fact, summary judgment is appropriate.

Courts review pro se pleadings carefully and liberally and interpret such pleadings "to raise the strongest arguments that they suggest." See e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). This is especially true in the summary judgment context, where a pro se plaintiff's claims are subject to a final dismissal. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.") (citation omitted). In reviewing a motion for summary judgment, the court may conduct a search of the record, and grant or deny summary judgment as the record indicates. See Fed. R. Civ. P. 56(c); New England Health Care Employees Union, District 1199, SEIU AFL-CIO v. Mount Sinai Hosp., 65 F.3d 1024, 1030 (2d Cir. 1995); Korea Life Ins. Co. v. Morgan Guar. Trust Co. of New York, 269 F. Supp. 2d 424, 446 (S.D.N.Y. 2003).

Plaintiffs' Remaining ETS Claim

As discussed in Johnson III, deliberate indifference to serious medical needs of a prisoner falls under the Eighth Amendment's prohibition of "cruel and unusual punishment" and the unnecessary and wanton infliction of pain. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). Inadvertent or negligent failure to provide adequate medical care does not rise to the level of deliberate indifference. Estelle,

5

429 U.S. at 105-06. To succeed on a claim of deliberate indifference, a plaintiff bears the burden of proof under a two-prong test, which has both objective and subjective elements. "Objectively the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists. Subjectively, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted).

The objective prong of the test requires that the plaintiff be subjected to conditions that are "repugnant to the conscience of mankind," Estelle, 429 U.S. at 106, or that result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To meet the second prong of the test, a plaintiff must demonstrate that the prison official acted with a culpable state of mind. The evidence must show that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiffs' section 1983 claims against the State of New York, DOCS, and the named defendants in their official capacities have been dismissed. See Johnson III, 2004 WL 2199500 at * 4. Only plaintiffs' pre-2001 ETS claims remain against defendants Goord, Greiner and Koenigsmann in their personal capacities. To succeed on a section 1983 claim against state officials in their personal capacities, a plaintiff must demonstrate "personal involvement of defendants in alleged constitutional deprivations . . . ." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted). "Personal involvement of a supervisory offi-

cial may be established 'by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'" Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 254 (2d Cir. 2001) (quoting Colon, 58 F.3d at 873) (alterations in original).

Here, plaintiffs assert that defendants Goord, the Commissioner of Prisons, and Greiner, the Superintendent of Green Haven, failed to properly supervise their employees and failed to establish and enforce policies within Green Haven to ensure that indoor smoking was banned. (Cmplt. ¶¶ 16-17) Plaintiffs assert that defendant Koenigsmann, in his role as Health Services Director, was responsible for all medical decisions at Green Haven and was responsible for supervision of medical personnel in the UPD. They contend that Koenigsmann knowingly allowed smoking to continue in the UPD. (Id. ¶ 20)

Plaintiffs' ETS claims, like other deliberate indifference claims, are considered under the two-prong analysis discussed above. See Helling v. McKinney, 509 U.S. 25, 35-36 (1993); see also Warren v. Keane, 196 F.3d 330 (2d Cir. 1999). To defeat defendants' motion on the objective prong, plaintiffs must come forward with some evidence from which a reasonable jury could find in their favor on their assertions that (1) they have been exposed to unreasonably high levels of ETS, and (2) the risk to their health posed by such exposure is significantly serious and "is not one that today's society chooses to tolerate." Helling, 509

7

U.S. at 35-36. Plaintiffs also need to come forward, in response to defendants' motion, with evidence from which a reasonable jury could find that the injuries of which they complain – or the potential future harm – were actually caused by exposure to unreasonably high levels of ETS at Green Haven. Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996).

In support of their renewed motion pertaining to the period prior to 2001, defendants submit the declaration of Thomas G. Eagen, Director of the DOCS Inmate Grievance Program and a member of the DOCS Smoking Committee, who describes the development of and the basis for the smoking policy at Green Haven prior to the complete indoor ban. Eagen explains that, in response to the New York State Legislature's 1989 enactment of the Clean Indoor Air Act ("CIAA"), codified at N.Y. Pub. Health Law § 1399-n et. seq., DOCS implemented the requirements of the Act as its policy pertaining to all "administrative offices/areas" of its facilities. (Eagen Decl. ¶¶ 6-7) As to the areas of a correctional facility to which inmates had regular access, the policy generally prohibited smoking in most common areas, restricting smoking to inmates' living areas, though superintendents of each facility were allowed "some discretion to prohibit smoking or to designate particular limited areas as being permissible for smoking." (Id. ¶ 8) Eagen states that with regard to housing areas, DOCS took the position that such areas were analogous to "private homes and/or residences" which are exempted from the restrictions imposed by the CIAA under N.Y. Pub. Health Law § 1399-q(1). (Id. ¶ 9)

Eagen attests that, in developing its smoking policy, DOCS considered prohibiting smoking altogether or creating separate housing units for non-smokers, and concluded that neither alternative was feasible at the time. It took account of the unique nature of a prison environment. DOCS concluded that a "sudden complete ban" on tobacco prod-

ucts in its facilities could have resulted in serious unrest among inmates and put both inmates and staff at risk. (Id. ¶¶13-18) The creation of separate smoking and non-smoking housing units would, according to Eagen, have eliminated the flexibility necessary to managing inmate assignments and transfers and enabled inmates to manipulate their placements for a variety of improper reasons, including to enable them to get closer to other inmates for the purpose of engaging in illegal activities and/or causing physical harm to other inmates. (Id. ¶¶ 19-22)

As time progressed, however, DOCS recognized a need to adapt its smoking policy to move toward the complete indoor ban. (Id. ¶¶ 23-24) Thus, on June 30, 1999, DOCS adopted the four-phase policy I described in Johnson III (2004 WL 2199500 at *16). (Eagen Decl. ¶¶ 24-25; Ex. A) The four-phase policy was, in DOCS's view, the best and safest way of addressing the various health and safety concerns related to the prohibition of smoking inside correctional facilities. (Eagen Decl. ¶ 26)

In Johnson III, I held that defendants had not met their summary judgment burden of establishing the absence of any disputed issue of material fact on the objective prong. I noted that, while defendants had submitted plaintiffs' medical records as exhibits to their motion papers, mere reference to the records themselves – amounting to over 5000 pages of largely handwritten, indecipherable material – "[did] not suffice to meet defendants' burden absent some affidavit or testimony from a person with knowledge of those records." Id. at *15. In support of their renewed motion, defendants have submitted an affidavit from defendant Koenigsmann, in which he describes his review of plaintiffs' medical records and the conclusions he draws from them, as well as from his "personal knowledge and recollections" of the plaintiffs, as relates to the seriousness of alleged injuries related to ETS expo-

sure. (Koenigsmann Decl. ¶ 1) Koenigsmann is currently a Regional Medical Director for DOCS, served as Facility Health Services Director for Green Haven from March 1999 to September 2003, and has practiced medicine for nearly 20 years. (Id.)

The complaint alleges, as to all plaintiffs, that their exposure to ETS has caused them to cough, caused their eyes to burn and resulted in their being "forced to use a [sic] albuterol pump to inhale." It further alleges that ETS can potentially cause skin irritation, skin cancer, and damage to plaintiffs' lungs. (Cmplt. ¶¶ 32-33) Here, unlike in Helling, 509 U.S. at 28, where the plaintiff claimed to have been forced to share a cell with another inmate who smoked five packs a day, plaintiffs do not allege that they were forced to share cells with smokers while at Green Haven, and, in fact, it appears from the record that plaintiffs were assigned to individual cells.

Based on Koenigsmann's review of plaintiffs' voluminous medical records, he found nothing leading him to believe that "any purported exposure to secondhand tobacco smoke by plaintiffs was life threatening, serious or caused any long-term health consequences." (Koenigsmann Decl. ¶ 13) Rather, Koenigsmann concluded that "none of the plaintiffs herein were exposed to secondhand smoke levels that could produce death, degeneration, or extreme pain or that posed an unreasonable risk of serious damage to their future health." (Id. ¶ 14)

Plaintiff Johnson alleges in the complaint that he has been exposed to ETS and has been "forced to breath [sic] secondhand smoke" since his arrival at Green Haven. (Cmplt. ¶ 7) He testified that the exposure to ETS resulted in breathing problems, required the use of an inhaler, made his eyes burn, caused a rash-like skin irritation on his chest and resulted in headaches, and that the smell of the cigarette smoke got into his clothes and hair.

10

(Johnson Dep. at 49-52, 67, 74-76, 118-19)  According to Koenigsmann's review of Johnson's records, the only references to purported respiratory effects of ETS therein all relate to dates when Johnson was incarcerated at a facility other than Green Haven.  (Koenigsmann Decl. ¶¶ 15-18)  Koenigsmann also states his medical opinion that the "sporadic notations" of physical symptoms associated with exposure to ETS "are by no means indicative of a serious medical condition or health risk," and that "at most the alleged exposure to secondhand tobacco smoke caused temporary discomfort."  (Id. ¶¶ 19-20)

Plaintiff Lynch alleges in the complaint that, as a result of his exposure to ETS, he has suffered respiration problems and has been "forced to use a [sic] ambulatory inhalation aerosol."  (Cmplt. ¶ 10)  Lynch testified that he had been diagnosed with asthma subsequent to his arrival at Green Haven, requiring his use of inhalers, and that the asthma was not a pre-existing condition, and developed as a consequence of his exposure to ETS.  (Lynch Dep. at 37-39, 54)  He further testified that the exposure to ETS resulted in his constant coughing and lack of energy.  (Id. at 54-55)

Plaintiff Stephenson also alleges that ETS exposure has caused him respiration problems and resulted in his being "forced to use a [sic] ambulatory inhalation aerosol."  (Cmplt. ¶ 12)  Stephenson testified that, though he has suffered from asthma since birth, exposure to ETS in prison has resulted in his having to use inhalers, and causes him to suffer chest pain and to wheeze and cough.  (Stephenson Dep. at 25-27, 34)

As to Lynch and Stephenson, Koenigsmann states in his declaration that his review of their medical records indicates that they have both "received occasional treatment for respiratory conditions" at Green Haven, but there is no mention of ETS exposure in the records, nor "any alleged injury, much less even minor discomfort, as a result thereof."

11

(Koenigsmann Decl. ¶ 24) Based on his review of the records, Koenigsmann concluded that "any alleged exposure to ETS did not pose an unreasonable risk to plaintiffs' health, nor did it have even a short-term, much less long-term, impact on either plaintiff's health," and that neither Lynch nor Stephenson "was exposed to secondhand tobacco smoke levels that could produce death, degeneration, or extreme pain or that posed an unreasonable risk of serious damage to their future health." (Id. ¶ 25)

In opposition to defendants' renewed motion, plaintiff Johnson, the only plaintiff to submit opposition papers, challenges Koenigsmann's qualifications to "scientifically configurate [sic] the effects of ETS" on Johnson's health based on the fact that Koenigsmann never personally examined Johnson, and states his belief that, "if given the opportunity to assert the scientific and statistical factors of harm caused by ETS," he would be able to meet the "sufficiently serious" test of the objective prong described in Helling, but also states that, due to his being incarcerated, he is unable to do so at this time. (Johnson Aff. ¶¶ 3-5) He requests that the Court appoint an "environmentalist" to conduct an unspecified "scientific inquiry" on his behalf. (Id. ¶ 27)

Summary judgment is appropriate where defendants present expert medical opinions as to the lack of a medical condition sufficiently serious to implicate the Eighth Amendment but plaintiffs fail to rebut them. See e.g., Gill v. Bracey, No. 99 Civ. 10429 (LMM), 2001 WL 34045758 at *4 (S.D.N.Y. July 17, 2001) (granting summary judgment on ETS claim where plaintiff "offered no scientific or medical evidence that he contracted asthma while at Woodbourne and thus no evidence of serious damage to his present or future health"); Nunes v. Artuz, No. 01 Civ. 1141 (DC), 2003 WL 22952743 at *7 (S.D.N.Y. Dec. 12, 2003) (granting summary judgment on Eighth Amendment claim based on alleged asbes-

tos exposure where plaintiffs submitted no evidence to rebut doctor's affidavit concluding future development of asbestos-related disease was not likely).

This case was commenced on October 31, 2001, and discovery closed on June 30, 2003. Plaintiffs have failed, in opposition to defendants' motion, to present any evidence that they were exposed to levels of ETS so harmful that "it is contrary to current standards of decency for anyone to be so exposed against his will." Helling, 509 U.S. at 35. Plaintiffs' pro se status, while implicating a more liberal interpretation of their pleadings, does not excuse them from the burden of coming forward with "concrete evidence from which a reasonable juror could return a verdict" in their favor. LaGrande v. Key Bank Nat'l Ass'n, __ F. Supp. 2d __, 2005 WL 2402519 at *4-*5 (S.D.N.Y. Sept. 28, 2005); see also Miller v. New York City Health & Hosp. Corp., No. 00 Civ. 140 (PKC), 2004 WL 1907310 at *9 (S.D.N.Y. Aug. 25, 2004). Defendants are entitled to summary judgment on the objective prong of plaintiffs' pre-2001 ETS claim.

2. Subjective Prong. Having concluded that plaintiffs have failed to come forth with evidence on which a reasonable jury could find that they have met the objective prong of the Eighth Amendment inquiry, summary judgment is appropriate. Nevertheless, I will address the subjective prong as well. As I noted in Johnson III, to make out their case under the subjective prong of the relevant inquiry, plaintiffs would be required to prove deliberate indifference, taking into account prison officials' "current attitudes and conduct and any policies that have been enacted." Johnson III, 2004 WL 2199500 at *16 (quoting Warren, 196 F.3d at 333). I traced in some detail the evolution of the smoking policies applicable at Green Haven, and the evidence submitted by defendants as to their enforcement of those policies, including disciplinary actions taken against inmates who violated smoking policies

as they existed at the time. That the smoking policy as it existed at Green Haven from January 1, 2001 prohibited all indoor smoking, and that defendants had demonstrated that such policy was enforced, led me to conclude that summary judgment was appropriate as to the period from that date to the present. Johnson III, 2004 WL 2199500 at *16-*17.

As discussed above, in support of this renewed motion, defendants, by way of the Eagen declaration, have submitted evidence demonstrating that, even prior to the outright ban on indoor smoking, there was in place at Green Haven a smoking policy designed to address the concerns of nonsmokers and to comply with DOCS's interpretation of state law, taking into account the unique nature of a prison environment. The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference," and, in considering the subjective prong of an Eighth Amendment inquiry, it is appropriate to take into account "arguments regarding the realities of prison administration." Helling, 509 U.S. at 36-37.

Nevertheless, plaintiffs claim that the failure to have in place a complete ban on indoor smoking is, in and of itself, indicative of deliberate indifference. Johnson claims that "the creation of 'smoking policies' as oppose [sic] to 'non smoking policies'" "allowed for an unconstitutional practice to occur." (Johnson Aff. ¶ 12; see also Lynch Dep. at 111 (only claims against Goord and Greiner are for "knowingly . . . continu[ing] to allow inmates to smoke in the prison system")) The Supreme Court made clear in Helling, however, that inmates do not have an unqualified constitutional right to a smoke-free environment, but only a right to be free of involuntary exposure to a level of ETS which "unreasonably endanger[s]" their future health, and exposure to which would be deemed "contrary to current standards of decency." Helling, 509 U.S. at 35. The adoption of a smoking policy designed to eliminate indoor smoking completely, though not in one fell swoop, cannot be said to

demonstrate deliberate indifference to an inmate's health, especially in light of the unique issues faced in administering a correctional facility. Cf. Zaire v. Artuz, No. 99 Civ. 9817 (LTS), 2003 WL 230868 at *6 (S.D.N.Y. Feb. 3, 2003) (citing, inter alia, Green Haven's 1997 smoking policy in concluding that plaintiff could not meet subjective prong of Helling inquiry).

The evidence also shows that, when Johnson filed grievances related to non-compliance with the pre-ban smoking policy, such grievances were addressed by prison and DOCS officials, and upheld to the extent that the administration insisted on enforcement of the smoking policy. (Johnson Aff. Exs. F, G)[3] Neither the policies adopted nor the enforcement thereof, even if imperfect, constitute deliberate indifference on the part of defendants.

Moreover, as the ETS claims relating to the pre-2001 time period survived only as against Goord, Greiner and Koenigsmann in their individual capacities, plaintiffs must prove "personal involvement of defendants in alleged constitutional deprivations . . . ." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).

Aside from the grievance procedure discussed above, plaintiffs claim to have brought their smoking-related complaints to the attention of various medical and administrative officials. They have not, however, introduced evidence that their complaints went unaddressed. In fact, it is evident that officials, in many instances, attempted to accommodate plaintiffs. Johnson contends that he complained verbally and in writing to various medical personnel, including defendant Koenigsmann, about his disagreement with the smoking policy and the effects smoke was having on him. He concedes that medical personnel instructed

---

[3] Lynch filed one grievance related to secondhand smoke prior to January 1, 2001, but the grievance was resolved informally and Lynch consented to such a resolution and withdrew the grievance. (Goidel Decl. ¶ 5) Stephenson filed no grievances at all relating to secondhand smoke prior to January 1, 2001. (Id. ¶ 6)

15

him to use the inhalers he had been given, and also to raise with the corrections officers any issues of noncompliance with the smoking policy. (Johnson Dep. at 51-53, 69-72) Stephenson claims to have complained to a doctor at Green Haven other than Koenigsmann, and said he was told that the doctor "talked to somebody about it." (Stephenson Dep. at 32-34) Lynch claims to have complained to "medical" in early 2000 about being housed between two smokers, and acknowledges that his complaint resulted in his being moved to a different cell. (Lynch Dep. at 44-45)

As to defendants Goord and Greiner, their alleged involvement is limited to their supervisory roles as Commissioner of Prisons and Superintendent of Green Haven, respectively. (Cmplt. ¶¶ 16-17; Johnson Dep. 122-23) As noted above, the grievances filed by Johnson were handled appropriately, and thus provide no basis for concluding that Goord and Greiner were involved in any alleged constitutional deprivation. Johnson also claims that he complained to various corrections officers about unauthorized smoking, but admits that, in response, the officers told him that they had been enforcing, and would continue to enforce, the smoking policy by citing inmates who violated the policy for misbehavior. (Johnson Dep. at 65-67) In one case, his complaints to a corrections officer apparently resulted in the designation of a smoking area within the UPD for staff members. (Id. at 121-22)

Plaintiffs have not supplied any evidence that defendants were "personally involved" in any alleged deprivation. There is no evidence of negligent supervision of subordinates, ignorance of evidence of any alleged constitutional violation, nor the creation or allowing the continuation of a policy or custom permitting unconstitutional practices. See Johnson v. Newburgh Enlarged School Dist., 239 F.3d at 254.

In opposition to defendants' motion, plaintiffs have not come forward with evidence from which a reasonable jury could find in their favor on the subjective prong.

Conclusion

For the reasons set forth above, defendants' renewed motion for summary judgment on plaintiffs' pre-2001 ETS claims is GRANTED. The Clerk is directed to enter a judgment in favor of defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 26, 2005